UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDRES SANCHEZ,<br><br>Defendant. | Case No. 1:21-cr-00238-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are four motions filed by the Government regarding the admissibility of certain evidence during the upcoming trial. (Dkts. 13, 18, 19, 33). Defendant opposes, at least in part, the Government motions: (1) Motion to Admit Prior Act Evidence Pursuant to 404(b) (Dkt. 13); (2) Motion to Exclude Evidence and Argument of Allegedly Non-Fraudulent Transactions (Dkt. 18); and (3) Motion to Introduce Expert PowerPoint Presentation and to Allow Expert Witness to Remain in Court Room (Dkt. 33). Defendant does not contest the Government's Motion in Limine to Exclude Evidence and Argument of Selective Prosecution (Dkt. 19). For the reasons discussed below, the Court will grant the Government's unopposed motion and grant in part and deny in part the Government's contested

motions.

## BACKGROUND

Defendant, Andres Sanchez, is a tax preparer who was indicted on eight counts of aiding and assisting in the preparation and presentation of false and fraudulent tax returns in violation of 26 U.S.C. § 7206(2). Dkt. 1. The charges against Mr. Sanchez relate to his work at Fiesta Pro Services ("FPS"), a tax preparation business located in Boise, Idaho, which employed Sanchez and multiple other tax preparers.

In 2016, The Internal Revenue Service—Criminal Investigations (IRS-CI) began investigating FPS after the IRS Scheme Development Center ("SDC") conducted a statistical analysis of the tax returns prepared by FPS and observed a high rate of refund percentages. After IRS-CI agents executed a federal search warrant at FPS, IRS-CI began locating and interviewing taxpayers. Eventually, the Government filed an eight-count indictment. Counts One through Seven charge Sanchez with committing tax preparer fraud on seven tax returns involving four separate taxpayers. *See id*. Count One involves I.S. and S.C.'s (husband and wife) 2015 return; Counts Two through Four involve J.C.'s 2014, 2015, and 2016 returns; Counts Five and Six involve Y.H.'s 2015 and 2016 returns; and Count Seven involves S.C.'s 2015 return. *Id*. Count Eight of the Indictment stems from

the undercover operation that took place in March of 2017. This case is currently set for trial on February 13, 2023.

## LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). Accordingly, "a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017); *see also Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Further, rulings on motions in limine are provisional and, therefore, "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). Thus, at trial, the court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *See Luce*, 469 U.S. 38 at 41 ("Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

## ANALYSIS

MEMORANDUM DECISION AND ORDER - 3

## A.      The Government's 404(b) Motion

Through its first evidentiary motion, the Government seeks to admit "other acts" evidence, including uncharged tax returns allegedly prepared by Sanchez and a statistical analysis performed by the IRS Scheme Development Center. *See Gov.'s Brief* at 1, Dkt. 13.

### 1.  Legal Standard

Federal Rule of Evidence 404(b)(1) prohibits using so-called "other act" evidence—evidence of crimes, wrongs, or other acts—"to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But other acts evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Ninth Circuit applies a four-part test to determine whether evidence is admissible under Rule 404(b). "Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (internal citation omitted). "The

**MEMORANDUM DECISION AND ORDER - 4**

government has the burden of proving that the evidence meets all of the above requirements." *Id.* (internal citation and quotation omitted). The Court must exclude evidence that meets this test if the prejudicial impact substantially outweighs the probative value. *Id.*

However, evidence of other acts that "is 'inextricably intertwined' with the charged offense," is not subject to Rule 404(b) analysis, regardless of whether it can meet the test for admissibility. *United States v. Wells*, 877 F.3d 1099, 1127 (9th Cir. 2017) (quoting *United States v. Beckman*, 298 F.3d 788, 793 (9th Cir. 2002)). "This exception applies when (1) particular acts of the defendant are part of a single criminal transaction, or when (2) 'other act' evidence is necessary to admit in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Id.* (quoting *Beckman*, 298 F.3d at 794) (cleaned up).

### 2.  Uncharged Tax Returns

The Government seeks to introduce four uncharged tax returns. *See Gov.'s Reply* at 2, Dkt. 30.[1] Specifically, the Government intends to introduce I.S. and

---

[1] Count Seven of the Indictment involving S.C.'s 2015 tax return was recently dismissed. *See* Dkt. 46. Resultingly, the Government informed the Court that it is no longer seeking to introduce the uncharged tax return regarding S.C.'s 2013 tax preparation.

S.S.'s 2013 and 2014 returns, J.C.'s 2013 return, and A.S.'s 2013 return. *Id*. Of the four uncharged tax returns, three of the tax returns involve one of the taxpayers included in the Indictment. *Id*. The remaining uncharged tax return, A.S.'s 2013 return, is not related to any charged tax returns, but the Government alleges that it similarly involves claiming ineligible dependents.

The Government argues that the four uncharged tax returns are admissible without needing to conduct a Rule 404(b) analysis because they are inextricably intertwined with the charged conduct. *See Gov.'s Brief* at 1, Dkt. 13. Alternatively, the Government argues that the uncharged tax returns are admissible even if a Rule 404(b) analysis applies because the evidence is relevant to intent, knowledge, absence of mistake, and lack of accident. *See id*. at 2. Sanchez disputes both arguments, instead claiming that there is insufficient evidence that he committed the "other acts." *See Def.'s Response* at 3, Dkt. 26.

> ### a.  *The Uncharged Tax Returns are subject to a 404(b) analysis*

As a threshold matter, the Court must determine whether the uncharged tax returns are "inextricably intertwined" with the charges. The Government argues that the uncharged tax returns are inextricably intertwined because they are both "part of a single criminal transaction" and "offer a coherent and comprehensible story regarding the commission of the crime." *Gov.'s Brief* at 1, Dkt. 13. The Court

is not persuaded.

First, the uncharged tax returns are not part of a single criminal transaction. Each charge in the Indictment involves only those tax returns directly at issue in each count. The uncharged tax returns are not necessary to establish any element of the charged crime, nor can they be considered a part of a single transaction. *See, e.g.*, *United States v. Uvari*, No. 218CR00253APGNJK, 2022 WL 783029, at *2 (D. Nev. Mar. 15, 2022) (holding that four individual tax returns "do not form parts of the same transaction charged and are not necessary to permit the government to offer a coherent story with regard to the charged returns.").

Second, the uncharged tax returns are not necessary for the Government to offer a "coherent and comprehensible story regarding the commission of the crime." *Wells*, 877 F.3d at 1127.  After reviewing the alleged Grand Jury testimony offered by the Government regarding the charged tax returns, the Court is not persuaded that the uncharged tax returns are integral for the jury to understand the Government's theory as to the charged tax returns. *See Gov.'s Brief* at 3-4, Dkt. 13.

This is particularly true regarding A.S.'s 2013 uncharged tax return. To the best of the Court's knowledge, none of the charged tax returns involve Sanchez allegedly providing a false social security number for a dependent, nor are there any charges in the Indictment that relate to A.S.'s tax returns. *See United States v.*

*Wells*, 879 F.3d 900, 928–29 (9th Cir. 2018) ("In determining whether particular evidence is necessary to the prosecution's 'coherent and comprehensible story,' we ask whether the evidence bears directly on the charged crime.") (quoting *United States v. Dorsey*, 677 F.3d 944, 952 (9th Cir. 2012)).

In an attempt to support its contention that the uncharged tax returns are necessary to establish a clear and comprehensible story regarding the charged tax returns, the Government relies on *United States v. Shabazz*, 887 F.3d 1204, 1217 (11th Cir. 2018). *See Gov.'s Brief*, Dkt 13, at 8. However, in *Shabazz*, the government charged the defendant with conspiracy to defraud the United States via a tax fraud scheme. *Id*. (noting that "it is enough that the uncharged evidence was an integral and natural part of [the] account of the tax-fraud conspiracy") (internal citation omitted). Unlike *Shabazz*, this case does not include a conspiracy charge or a scheme to defraud; instead, the Government has clarified that this case involves isolated incidents of alleged tax preparer fraud. *See Gov.'s Reply* at 3, Dkt. 29. ("there is no allegation in the Indictment that Defendant engaged in a scheme to defraud. Instead, the Government alleges that, on eight separate occasions, Defendant advised taxpayers to file false tax returns."). Therefore, the Court is not persuaded by the reasoning in *Shabazz*, nor does it find that the prosecution would encounter any particular difficulty in presenting the evidence relevant to the

charged tax returns without the various uncharged tax returns.

Accordingly, the four uncharged tax returns are not inextricably intertwined with the charged criminal conduct. *See United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013) ("Where the evidence ... is not part of the charged transaction and the prosecution would encounter little difficulty in presenting the evidence relevant to its case against the defendant without it, the evidence is not admissible as being intrinsic to the charged offense.") (citing *United States v. King*, 200 F.3d 1207, 1215 (9th Cir. 1999)).

### b.  The Uncharged Tax Returns Are Admissible Under 404(b)

Since the uncharged tax returns are not inextricably intertwined with the charges, the Government has the burden to prove that the evidence meets the requirements under Rule 404(b).

Sanchez challenges the admission of the uncharged tax returns under the materiality, similarity, and sufficiency prongs of the 404(b) test. *Def.'s Response* at 7, Dkt. 26. Sanchez does not appear to challenge whether the uncharged tax returns contain false information. Instead, Sanchez's primary challenge is to the Government's ability to establish that Sanchez was the FPS employee who prepared the uncharged tax returns because Sanchez is not listed as the paid preparer on any of the uncharged tax returns. *Id.* at 8.

Although the Government concedes that Sanchez is not listed as the paid tax preparer on the uncharged tax returns, the Government can nonetheless satisfy the third prong under the Ninth Circuit's "low threshold test of sufficien[cy]." *United States v. Lague*, 971 F.3d 1032, 1040 (9th Cir. 2020) (quoting *United States v. Dhingra*, 371 F.3d 557, 566 (9th Cir. 2004)). To meet the sufficiency test, the government need only lay a factual foundation from which a jury could reasonably conclude that Sanchez prepared or assisted in preparing the uncharged tax returns. *See id*.

To combat Sanchez's claim that the lack of signature on the uncharged tax returns renders them inadmissible, the Government alleges that during the Grand Jury, each of the taxpayers testified that it was Sanchez, and not the listed tax preparer, who prepared or assisted in preparing the uncharged tax returns.[2] *See Gov.'s Brief* at 3-4, Dkt. 13; *Gov.'s Reply* at 3-4, Dkt. 30. While the Court acknowledges that there may be a factual debate for the jury to decide, assuming the Government sufficiently introduces testimony from each of the taxpayers at

---

[2] The Court will note that if I.S's testimony regarding the 2013 uncharged testimony is limited to her statement that the designated tax preparer "did not prepare" the uncharged tax return without any further reference to Sanchez's involvement, the Government will likely fail to lay the necessary foundation to meet the sufficiency prong under 404(b). *See Gov.'s Reply* at 3, Dkt. 30.

trial that matches their alleged Grand Jury testimony, such testimony would satisfy the sufficiency prong for the uncharged tax returns.[3] *See, e.g., Dhingra*, 371 F.3d at 566 ("the testimony of a single witness, as present in this case, satisfies the low-threshold test of sufficient evidence for the purposes of Rule 404(b)."); *United States v. Ali*, 616 F.3d 745, 753 (8th Cir. 2010) (finding the sufficiency prong met because "[a]ll four 404(b) witnesses testified that [the defendant] either provided a dependent for them or suggested that they find a dependent to claim.").

The Government can similarly meet the materiality requirement. The Ninth Circuit has explained that "Rule 404(b) is a rule of inclusion-not exclusion-which references at least three categories of other 'acts' encompassing the inner workings of the mind: motive, intent, and knowledge." *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007). In order to convict Sanchez under 26 U.S.C. § 7206(2), the Government must prove that he acted willfully. *See United States v. Salerno*, 902 F.2d 1429, 1431-32 (9th Cir. 1990) (citations omitted). Accordingly, Sanchez's intent and knowledge are relevant to the charged offenses. *See United*

---

[3] Through this decision, the Court is not relieving the Government of its burden to lay the necessary foundation for each uncharged tax return during the trial. Instead, the Court finds that if the Government can produce the evidence they claim to possess, it will meet the sufficiency prong under the Ninth Circuit's low bar. *See Lague, 971 F.3d at 1040*. Further, neither party has provided the Court with excepts of the Grand Jury testimony. As such, the Court has relied on the alleged testimony as provided by the parties.

*States v. Mayans*, 17 F.3d 1174, 1182 (9th Cir. 1994) (finding that knowledge and intent were material issues "simply because the government had to prove them."). Thus, the uncharged tax returns are relevant to the issue of whether Sanchez willfully committed tax fraud. *See Ali*, 616 F.3d at 753 (finding testimony from four taxpayers whose returns did not form the basis for any charges under 26 U.S.C. § 7206(2) relevant evidence of willfulness).

Next, the Government can meet the similarity prong of the 404(b) test. Sanchez attempts to distinguish the uncharged tax returns from the charged offenses through various disparities between the dependents listed on the respective tax returns. *Def.s' Response* at 9, Dkt. 26. However, the differences between the dependents are not significant and do not override the clear similarity between the charged offenses and the uncharged tax returns. All of the uncharged tax returns involve the same alleged misconduct—preparing tax returns that claim deductions for ineligible dependents. Further, three of the four uncharged tax returns involve the same taxpayers as in the charged offenses.

The Court acknowledges that A.S.'s 2013 uncharged tax return tends to deviate more significantly from the charged offenses. *See Gov.'s Brief* at 4, Dkt. 18 (there are no charges related to A.S. in the Indictment, and the Government claims that Sanchez offered to provide a social security number for a dependent). A.S.'s

2013 uncharged tax return is nonetheless sufficiently similar to the charged

conduct to meet the 404(b) standard. The Ninth Circuit has held that the "similarity

requirement does not require that the prior bad act be precisely the same as the

charged act, as long as the prior act was one which would tend to make the

existence of the defendant's knowledge more probable than it would be without the

evidence." *United States v. Rodriguez*, 880 F.3d 1151, 1167 (9th Cir. 2018)

(quoting *United States v. Hardrick*, 766 F.3d 1051, 1055 (9th Cir. 2014)) (internal

quotations omitted). The fact that Sanchez allegedly obtained a Social Security

number for a dependent would tend to make it more probable that Sanchez

willfully prepared or aided in preparing the charged tax returns allegedly claiming

ineligible dependents.

Finally, the uncharged tax returns are not prohibited by Rule 403. Given the

similarities between the prior acts and the indicted counts, the prior acts evidence

is probative, and Sanchez has failed to establish that the prejudicial effect

substantially outweighs the probative value. Further, any prejudice is curable with

an instruction from this Court. Accordingly, if the Government presents evidence

substantially similar to the alleged Grand Jury testimony, the Court intends to

admit the uncharged tax returns under 404(b). The Court will therefore grant the

Government's motion as it relates to I.S. and S.S.'s 2013 and 2014 tax returns,

J.C.'s 2013 tax return, and A.S.'s 2013 tax return.

### 3.  SDC Statistical Analysis

In its Motion to Admit Prior Act Evidence Pursuant to 404(b), the Government initially sought to introduce a chart prepared by SDC showing a statistical analysis of the refund percentages for tax returns prepared at FPS from 2012 through 2016. *See Gov.'s Brief*, Dkt. 13, at 1. However, the Government recently informed the Court that it is modifying its prior request, stating that it no longer seeks to admit the SDC analysis into evidence. *See Gov.'s Reply*, at 3, Dkt. 43. Instead, the Government now informs the Court that it intends to introduce testimony explaining that the federal investigation began after a referral from SDC to the Boise IRS-CI office, which was based on statistical analysis, and that the Government will also reference the fact that most tax preparer investigations referrals begin that way. *See id*. at 3-4.

In its modified request, the Government asks this Court to permit the introduction of the intended testimony; however, the Government has not provided sufficient information for the Court to determine whether this evidence is subject to a Rule 404(b) analysis or if such testimony is admissible. *See United States v. Moffit*, 588 F. Supp. 3d 1106, 1111 (D. Idaho 2022) (denying the plaintiff's motion in limine for lack of sufficient information to determine whether the evidence is

subject to a Rule 404(b) analysis).

Moreover, the Government only modified its request in its most recent filing. Sanchez has, therefore, not been provided with an opportunity to address the Government's modified request. Accordingly, the Court will deny as moot the Government's Motion to Admit Other Acts Evidence as it pertains to any evidence of the SDC statistical analysis and defer any ruling on the admissibility of the intended testimony until trial.

### B.      Non-Fraudulent Transactions and Conduct

The Government's second motion in limine seeks to exclude Sanchez from introducing evidence and argument of allegedly non-fraudulent transactions or conduct. *See Gov.'s Brief* at 1, Dkt. 18. The Government argues that such evidence constitutes inadmissible character evidence, and its probative value is substantially outweighed by unfair prejudice. *See id.* at 1-2. Without providing any specific evidence that he intends to introduce, Sanchez opposes the Government's Motion, arguing that Sanchez should be able to introduce such evidence as a relevant character trait or, alternatively, that prior "good acts" may be admissible under Rule 404(b). *See Def.'s Response* at 3-4, Dkt. 27.

As the Government correctly points out, generally, "[a] defendant cannot establish his innocence of crime by showing that he did not commit similar crimes

on other occasions." *Herzog v. United States*, 226 F.2d 561, 565 (9th Cir. 1955), *adhered to on reh'g*, 235 F.2d 664 (9th Cir. 1956). However, Sanchez has not proffered any evidence of specific non-fraudulent evidence that he intends to present at trial, nor does he definitively state that he has any such intention. Without knowing the form this evidence will take, or the purpose for which it is offered, the Court cannot definitively rule on its admissibility. Further, the Court declines to categorically ban all evidence without the opportunity to address the specific evidence at issue based on a hypothetical proffer of evidence. *Sperberg v. Goodyear Tire & Rubber, Co.*, 519 F.2d 708, 712 (6th Cir. 1975) (generally, motions in limine excluding broad categories of evidence are disfavored—as such issues are more fairly dealt with during trial as the admissibility of evidence arises).

Accordingly, the Government's Motion (Dkt. 18) will be denied; however, if Sanchez chooses to attempt to introduce evidence of the non-fraudulent preparation of tax returns, he must be prepared to address how *Herzog* can be distinguished from this case.

### C.   Expert PowerPoint Presentation and Expert Witness Remaining in Courtroom

In its fourth and final motion in limine, the Government seeks to allow its expert witness, Ms. Emminger, to present a PowerPoint during her testimony at

trial. *Gov.'s Brief*, Dkt. 33, at 1. The Government further requests that Ms. Emminger be allowed to remain in the courtroom during trial and then testify as a summary expert witness on the tax harm to the Government. *Id*. at 2.

Sanchez does not object to the PowerPoint presentation as a demonstrative exhibit, nor does he object to Ms. Emminger's presence in the courtroom during witness testimony. *Def.'s Response* at 3, Dkt. 38. As such, the Court will grant the Government's motion allowing Ms. Emminger to remain in the courtroom during testimony and generally that she may use a PowerPoint presentation as a demonstrative exhibit.

Sanchez, however, objects to the designation of Ms. Emminger as a "fraud specialist" absent proper foundation being laid, to the introduction of the SDC statistical analysis as an explanation for the investigation, and to the proffered testimony in Ms. Emminger's expert report. *Id.* at 1-3.

### a.   Ms. Emminger's designation as a fraud specialist

Sanchez does not inherently oppose the Government's designation of Ms. Emminger as a "Fraud Specialist;" rather, Sanchez objects to any such designation in the absence of a proper foundation to establish her special training and expertise within that area of the Treasury Department. *Id.* at 1. However, that objection incorrectly presupposes that being designated a "Fraud Specialist" has some

significant cachet under the Federal Rules of Evidence. It does not. Even if Ms. Emminger is proffered as an expert under Rule 702, it is not the Court's practice of formally recognizing that witness as an expert in front of the jury. Rather, the proponent of the expert simply lays the Rule 702 foundation, and then asks the witness questions calling for an opinion. If the proper foundation has been laid, either opposing counsel will not object or, if they do object, the objection will be overruled. Nothing calls for the Court to give the witness its imprimatur by designating him or her as an "expert." The Court has never done that, and sees no reason to start now.

On the other hand, if Ms. Emminger's job title is "fraud specialist," the Government can establish that as part of its foundation, and is then free to use that term during direct examination so long as it is clear to the jury that counsel is only referring to her job title and not her level of expertise. With this guidance, Sanchez's objection is overruled.

### b. SDC statistical analysis

Sanchez's second objection is now moot. As discussed above, the Government has modified its intention of introducing the SDC statistical analysis. *See Gov.'s Reply* at 3-4, Dkt. 43. Further, it is unclear to what extent the Government intends to introduce testimony regarding such evidence. Since the

admissibility of the testimony will vary depending on the extent and detail of the SDC analysis presented at trial, the Court will continue to defer on deciding the admissibility of such information.

       *c. Expert report regarding the determination of false items*

Sanchez's primary objection to the Government's request relates not to the PowerPoint but to the proffered testimony contained in her expert report. *See Def.'s Response* at 3, Dkt. 38.

First, Sanchez argues that to the extent Ms. Emminger offers opinion testimony as to the falsity of the items, the opinion is not helpful in assisting the jury's understanding of the evidence. *Id*. Without providing any support, Sanchez further argues that such testimony amounts to a comment on guilt or innocence and invades the province of the jury. *Id.* Sanchez's argument conflates factual testimony with impermissible legal conclusions.

Federal Rule of Evidence 702 requires that expert testimony "help the trier of fact to understand the evidence or determine an issue of fact." *Id.* "Generally, an expert can testify on an ultimate issue in a case, except regarding the requisite mental state of the defendant or a condition constituting an element of or defense

to the crime."[4] *United States v. Moran*, 493 F.3d 1002, 1008 (9th Cir. 2007) (citing Fed. R. Evid. 704). However, expert testimony that embraces an ultimate factual issue is admissible at trial. *See Hangarter v. Provident Life and Accident Ins. Co.,* 373 F.3d 998, 1017 (9th Cir.2004) (an expert witness "may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms.") (citing *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988)).

As the Government notes, the Ninth Circuit held in *United States v. Clardy* that it was not plain error for the trial court to permit an IRS agent to give an opinion as to the validity of a tax deduction. 612 F.2d 1139, 1153 (9th Cir. 1980). The defense argued that the propriety of a deduction was "a question of law, on which the judge should have instructed the jury." *Id.* The Ninth Circuit rejected this argument, concluding that such testimony was admissible and relevant to rebut the defendant's theory that he had not willfully evaded taxes. *Id.*

In a more recent criminal tax case, *United States v. Moran*, the defendant argued that the Government's expert witness gave an impermissible legal

---

[4] The Government has informed Sanchez and this Court that Ms. Emminger will not offer an opinion on Sanchez's state of mind or the credibility of the taxpayers. *See Gov.'s Reply* at 2, Dkt. 43.

conclusion when he testified that a transaction reported on a tax return was a "sham." *Moran*, 493 F.3d at 1008. The Ninth Circuit rejected this argument, finding that the testimony did not address a legal conclusion. *Id.* The court reasoned instead that the testimony was factual and relevant to an element of one of the crimes, which was that the "return was false as to something that was necessary to a determination of whether income tax was owed." *Id.* The Ninth Circuit further explained, "[u]nder the judge's instructions, even if the transactions were a sham, the jury would still have had to draw its own inference from that predicate testimony to answer the ultimate factual question of whether income tax was owed." *Id.*; *see also United States v. Aleykina*, 827 F. App'x 708, 710 (9th Cir. 2020) (In a recent unpublished decision, the Ninth Circuit upheld the trial court's admission of an IRS expert's opinion testimony that defendant's legal separation from her husband was not valid for federal tax purposes).

Like the experts in *Moran* and *Clardy*, Ms. Emminger may testify to the factual issue of a dependent's eligibility, even though "those facts [may be] couched in legal terms." *Hangarter*, 373 F.3d at 1017. As the Government accurately points out, "[u]nder § 7206(2), the government must prove that . . . that the return was fraudulent or false as to a material matter[.]" *United States v. Smith*, 424 F.3d 992, 1009 (9th Cir. 2005) (quoting *Salerno,* 902 F.2d at 1432 (9th Cir.

1990)) (internal quotations omitted). Testimony on the eligibility of a dependent listed on a tax return is therefore relevant and will aid the jury in determining a factual issue. Further, testifying to the eligibility of the dependents does not render a legal conclusion on an ultimate issue. Even if Ms. Emminger opines that a dependent is not eligible, the jury will still have to draw its own inference from that testimony to determine if the return was "false or fraudulent" and, if so, whether the listing of the dependent was "material." *Moran*, 493 F.3d at 1008.

However, the Court recognizes that Ms. Emminger's proffered testimony walks a fine line with Rule 704. Specifically, the Court finds that during Ms. Emminger's testimony, she should not use the words "false" or "fraudulent" regarding any of the tax returns in the charged offenses. Unlike opining about the eligibility of a dependent, the Court finds that stating that the tax returns are false or fraudulent invades the jury's province.

Accordingly, the Court intends to allow Ms. Emminger to testify about the eligibility of dependents for the admissible tax returns, but she must refrain from using the words false and fraudulent during her testimony.[5] That said, the

---

[5] Sanchez accurately points out that the Government has not established that all of the tax returns included in Ms. Emminger's chart are admissible. *See Gov.'s Brief*, Ex. A, Dkt. 33-1. (Continued)

**MEMORANDUM DECISION AND ORDER - 22**

Government should alert the Court when it intends to call Ms. Emminger to the stand. At that point, the Court intends to reassess the record and confirm its preliminary determination that Ms. Emminger's testimony is admissible under Rule 704.

Second, Sanchez opposes the admissibility of Ms. Emminger's calculation regarding the tax harm for "all clients for all years 2013 through 2017." *See Def.'s Response* at 3, Dkt. 38. Sanchez argues that Federal Rule of Evidence 403 should preclude such testimony. *Id.* The Court agrees with Sanchez in part.

As an initial matter, Sanchez does not appear to be challenging testimony regarding the tax harm allegedly caused by the tax returns that relate to the charged offenses; rather, he seems to be continuing to challenge the uncharged tax returns on the basis that Sanchez did not prepare those returns and because no conspiracy is charged in this case. *See id*. Because Sanchez has not argued that someone else prepared the tax returns related to the charged offenses, the Court will assume that he is only objecting to testimony regarding the tax harm for the uncharged returns.

---

Specifically, the Government has not indicated that it intends to admit I.S. and S.S.'s 2016 tax return or A.S.'s 2017 tax return. As such, Ms. Emminger's testimony on the correctness of dependents should be limited to the charged tax returns and the uncharged tax returns discussed in the Government's 404(b) Motion. Conversely, she may not testify to I.S. and S.S.'s 2016 tax return or A.S.'s 2017 tax return.

For the reasons discussed above, the Court disagrees with Sanchez's argument that some of the uncharged tax returns are inadmissible because he was not the signed tax preparer.  However, the Court is less persuaded that testimony regarding the tax harm for the uncharged tax returns passes the Rule 403 balancing test. *See* Fed. R. Evid. 403. As discussed above, the uncharged tax returns are probative of Sanchez's willfulness to commit tax preparer fraud. However, the potential tax harm for the uncharged tax returns has minimal, if any, probative value into Sanchez's intent or knowledge of preparing or assisting in preparing fraudulent tax returns. Moreover, the inclusion of such alleged harm creates a high likelihood of confusing the jury and eliciting an emotional response. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) (Evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."). Nevertheless, it is difficult to assess the probative value and the likelihood of prejudice or confusion in the abstract. Accordingly, the Court will only caution the Government that it is skeptical that such evidence will be admissible under Rule 403. The Court will defer ruling on the Government's request to proffer expert testimony regarding the tax harm allegedly caused by any uncharged tax return.

## ORDER

**IT IS ORDERED that:**

1.      The Government's Motion to Admit Prior Act Evidence Pursuant to 404(b) (Dkt. 13) is **GRANTED** as it pertains to I.S. and S.S.'s 2013 and 2014 tax return, J.C.'s 2013 tax return, and A.S.'s 2013 tax return, and **DENIED** as it pertains to the SDC analysis.

2.      The Government's Motion to Exclude Evidence and Argument of Allegedly Non-Fraudulent Transactions is **DENIED**.

3.      The Government's Motion in Limine to Exclude Evidence and Argument of Selective Prosecution (Dkt. 19) is **GRANTED**.

4. The Government's Motion to Introduce Expert PowerPoint Presentation and to Allow Expert Witness to Remain in Court Room is **GRANTED** in part, **DENIED** in part, and **DEFERRED** in part, as explained in the Court's decision above.

DATED: February 8, 2023

B. Lynn Winmill
U.S. District Court Judge