UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:21-cr-00238-BLW |
| Plaintiff, | |
| v. | MEMORANDUM DECISION AND ORDER |
| ANDRES SANCHEZ, | |
| Defendant. | |

## INTRODUCTION

Before the Court is Defendant Andres Sanchez's motion for a new trial (Dkt. 70). Having thoroughly considered the parties briefing and the relevant record, the Court finds oral argument unnecessary. For the reasons set forth below, the Court will deny the motion for a new trial.

## BACKGROUND

In late 2021, Mr. Sanchez was indicted on eight counts of aiding and assisting in preparing and presenting false and fraudulent tax returns in violation of 26 U.S.C. § 7206(2). *See* Dkt. 1. After Count Seven of the Indictment was dismissed, this matter proceeded to trial in February 2023. Following a five-day trial, an eleven-member jury found Mr. Sanchez guilty as to Counts Two through

Six and Eight of the Indictment and was hung as to Count One. *See* Dkt. 69. The crux of this motion, however, involves the events that unfolded during the jury's deliberations.

After both parties rested on the fourth day of trial, the case was given to the jury. That afternoon, the jury sent its first question to the Court, which requested the trial transcript from a particular witness. While the Court was in the process of arranging a read-back of the witness's testimony, the jury sent two additional questions. The jury first asked, "if it's a hung jury on one count, are the other counts hung as well?" *See Jury Questions* at 5, Dkt. 68. The Court then informed the jury that its decision as to each Count is independent of its decision regarding any other Counts. *Id.* at 6. The jury subsequently asked, "if it's a hung jury on a count, how long do we have to continue deliberation?" *Id.* at 7. Among other things, the Court responded that "[t]here is no formula or rule as to how long a jury should deliberate[,]" as only "jurors can decide whether further deliberations would be productive in trying to reach a unanimous verdict." *Id.* at 8. Eventually, the jury was sent home at the end of the fourth day with instructions to return the following morning to continue deliberations.

The next morning—the fifth day of trial—the Jury Commissioner reported to the Court that a juror had attempted to present a note to her before deliberations

had resumed. Similarly, a law clerk, who was not assigned to work on this matter, reported that a juror had approached him and asked to speak with the Court's clerks "[b]ecause there is some stuff going on in the jury room, some racism I don't want to be part of." *Trial Tr.* 7:4-5, Dkt. 82. After the Court inquired into the communications on the record, it was determined that the juror who contacted court staff that morning was Juror 16.

Soon after the Court learned about Juror 16's concerns about potentially biased comments, the twelve-person jury informed the Court that it had reached a verdict. The Court, however, decided that before it could accept a verdict from the jury, it needed to further inquire into the "racism" comment Juror 16 had made that morning. The Court then brought Juror 16 into the courtroom to further investigate his concerns. Juror 16 informed the Court that a juror said something to the effect of "[y]eah. And anyway, the Mexicans, all they want to do is screw us over anyway." *Id.* at 15:3-5.

In addition to the in-court inquiry, the Court had a Magistrate Judge, with no substantive prior involvement in the case, review Juror 16's letter and redact any portions that would reveal the jury's deliberative process, only leaving what was

necessary to consider the issue of potential bias.[1] *See id.* at 23:19-22. After reviewing the redacted letter, the Court found it "very corroborative or at least consistent with what [Juror 16] testified to here." *Id.* at 24:2-3. Following its investigation into Juror 16's concerns, the Court noted that it "is quite clear that a racially motivated comment was made during deliberations which the juror found to be offensive and troublesome." *Id.* at 17:13-15.

At that point, the defense moved for a mistrial, arguing that the comments Juror 16 described violated Mr. Sanchez's Sixth Amendment right to a fair trial because even one biased juror is enough to warrant a new trial. *See id.* at 18:9-22. The Court took the motion under advisement, determining that there was a need to conduct a further inquiry into (1) whether the potentially biased statement was made, (2) whether other jurors heard the statement, (3) if the statement was made, when did it happen; and (4) if any juror heard the statement, whether it would affect their deliberation or verdict in any way. *See id.* at 24:8-22. The Court proceeded to bring each juror into the courtroom to conduct an *in camera* inquiry

---

[1] In addition to having the Magistrate Judge redact the letter, the Court was adamant about avoiding any conversation or questioning regarding the merits of the jury's deliberations. *See United States v. Symington*, 195 F.3d 1080, 1087 (9th Cir. 1999) ("We hold that if the record evidence discloses any *reasonable* possibility that the impetus for a juror's dismissal stems from the juror's views on the merits of the case, the court must not dismiss the juror.")

**MEMORANDUM DECISION AND ORDER - 4**

with only the court staff and the parties present. After meeting with each juror, the Court developed a general idea of what had occurred during the first day of deliberations.

Although there was some confusion regarding which juror made the allegedly biased statements, the Court ultimately concluded that Juror 5 made statements regarding either individuals who are Hispanic or people who are Mexican nationals. *See Def.'s Br.* at 2, Dkt. 70; *Gov.'s Resp.* at 9, Dkt. 87. However, only a few other jurors heard any comments that they considered indicative of racial bias. Of those jurors who did hear a concerning statement, Juror 25 noted that Juror 5 made a statement "about the Mexican culture and more of how they act compared to Americans when they come over here." *Trail Tr.* 42:15-17, Dkt. 82. Juror 25 described the comment as something like, "[w]hen Mexicans come here, they act like they can't speak English to get away with certain things." *Id.* at 43:10-11. Juror 15 explained that he heard Juror 5 make a comment that he described as "more ignorant than it was a derogatory comment," which had something to do with "cartels." *Id.* at 60:4-62:12. Juror 12 heard comments about "how the Hispanic community kind of pulls together for themselves." *Id.* at 68:7-69:13. However, Juror 12 did not interpret the comments as biased, nor was she able to identify who made them. *Id.*

MEMORANDUM DECISION AND ORDER - 5

While only a few jurors heard any comments they considered biased, it was clear that additional jurors heard Juror 16 accuse someone of being racist. Although there was again some confusion about who Juror 16 directed his accusation at, multiple jurors understood it to be directed at Juror 1. However, the Court inevitably determined that Juror 16's accusation was "misdirected at Juror [1] because there [are] really no allegations here that [he] was, in fact, biased or prejudiced." *Id*. at 99:2-100:1. Nevertheless, the Court found that:

> all the jurors [other than Juror 5] unequivocally expressed their view that they were not affected by any statement or any accusation of discrimination; [and] that they do not believe that their individual verdict or the verdict of other jurors except perhaps Juror [5] would have been affected by any statement or accusation of racism made during the jury's deliberations.

*Id.* at 98:16-21.

Following the Court's inquiry, the defense renewed its motion for a mistrial. *Id.* at 96:18-19. The Court again denied the motion, stating that "in this circumstance, there [are] not grounds for granting a mistrial." *Id.* at 98:16-14. The Court did, however, decide to dismiss Juror 5 for good cause, explaining that Juror 5 "made a statement that demonstrated animus based upon national origin or ethnicity. And for that reason, he cannot and his verdict . . . should not be received or his vote should not be made part of the jury's conclusion in this case." *Id.* at 100:14-19. The Court then decided that rather than seating an alternate,

"proceeding with [the eleven] jurors [was] the appropriate course." *Id.* at 101:17-18. The Court explained, "the jury [had] been waiting virtually all day" and if it was to seat an alternate, the jury would presumably have to start over with its deliberations the next week. *Id.* at 101:11-116.

Having decided the proper course of action, the Court brought the jury back into the courtroom. After dismissing Juror 5, the Court informed the remaining jurors that, "the thing you should consider [when the jury returns to its deliberations] is whether excusing Juror [5] and functioning as a jury of 11, whether you have reached a different verdict or would reach a different verdict[.]" *Id.* at 107:5-8. Soon after the eleven-person jury returned to deliberations, the jury informed the Court that it had again reached a verdict, which the Court proceeded to accept. As noted, the jury found Mr. Sanchez guilty of Counts Two through Six and Eight of the Indictment. *See* Dkt. 69.

After the trial was completed, Mr. Sanchez again filed a motion for a new trial. *See Def.'s Br.*, Dkt. 70. In his motion, Mr. Sanchez relies predominately on the same arguments he made during the trial. Specifically, Mr. Sanchez argues that he is entitled to a new trial under the Sixth Amendment because (1) Juror 5's presence for virtually the entirety of the jury's deliberations amounts to a structural error, and (2) even if Juror 5's presence does not rise to the level of a structural

error, the interests of justice demand a new trial because Juror 5's bias tainted the jury's verdict. *See id.* at 3-10. Mr. Sanchez also argues that the Court's decision to proceed with an eleven-member jury was a mistake because a retrial would not have been too burdensome. *Id.* at 10–11.

## LEGAL STANDARD

A new trial may be granted by the district court when the "interest of justice so requires." Fed. R. Crim. P. 33(a). A motion for a new trial should only be granted "in an exceptional case in which the evidence weighs heavily against the verdict." *United States v. Merriweather*, 777 F.2d 503 (9th Cir. 1985). Whether to grant a new trial based on allegations of juror bias is within the Court's discretion. *United States v. Hayat*, 710 F.3d 875, 885 (9th Cir. 2013) ("We review the denial of a motion for a new trial based on assertions of juror bias for abuse of discretion.") (citations omitted). However, a "district court's factual findings relating to the issue of juror misconduct [are reviewed] for clear error." *United States v. Vartanian*, 476 F.3d 1095, 1098 (9th Cir. 2007).

## ANALYSIS

### A.    Juror 5's potentially biased remarks

#### 1. Structural error

Mr. Sanchez first argues that Juror 5's racially biased remarks amount to a structural error, which demands a new trial regardless of whether any harm

occurred. *See Def.'s Br.* at 3, Dkt. 70. Specifically, Mr. Sanchez argues that he need not show that Juror 5's bias pervaded the jury room because "[t]he bias or prejudice of even a single juror violates a defendant's right to a fair trial." *Id.* at 4 (quoting *United States. Henley*, 238 F.3d 1111, 1120 (9th Cir. 2001)). Mr. Sanchez further claims that Juror 5's "presence was a structural error because his presence 'permeate[d] the [jury] from beginning to end' and the harmfulness of his racially biased comments 'cannot be quantitatively assessed' in the broader context of trial." *Id.* at 5.[2]

Conversely, the government argues that Mr. Sanchez is not entitled to a new trial because no structural error occurred. While the government does not inherently dispute Mr. Sanchez's claim that generally, "[t]he presence of a biased juror cannot be harmless;" it contends that the general rule is not applicable here because "there was no biased juror that returned a verdict in this case." *Gov.'s Resp.* at 11, Dkt. 87 (quoting *Dyer v. Calderon*, 151 F.3d 970, 973 n.2 (9th Cir. 1998)). The government instead argues that because the Court dismissed Juror 5 before the jury returned a verdict, the Ninth Circuit's decision in *United States v. Sarkisian*, 197 F.3d 966 (9th Cir. 1999) provides the proper inquiry, and under that

---

[2] It appears that Mr. Sanchez is quoting *United States v. Harmon*, 833 F.3d 1199, 1204 (9th Cir. 2016).

standard, Juror 5's involvement in the deliberations alone is not enough to warrant a new trial. *Id.* Not without some reservation, the Court agrees.

As a threshold matter, this case presents a unique set of circumstances that the Court, and apparently the parties, have been hard-pressed to find any analogous authority. Generally, cases involving Sixth Amendment claims based on racially insensitive or biased statements that occur during deliberations have hinged on whether the evidence of jury deliberations is prohibited by Federal Rule of Evidence 606(b), whether a juror's statements demonstrated any actual or implicit bias, or whether the trial court's decision to deny a request to dismiss a potentially biased juror was in error. *See e.g., Peña-Rodriguez v. Colorado*, 580 U.S. 206, 211 (2017); *United States v. Hayat*, 710 F.3d 875, 885 (9th Cir. 2013); *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998). Therefore, existing case law provides little guidance on what to do in the unique situation presented here – where a juror has been dismissed after taking part in deliberations but before the trial court has accepted a verdict.

While the Supreme Court's decision in *Peña-Rodriguez v. Colorado* recently resolved the first—and most common—question of whether a trial judge may make inquiry into the effect of discriminatory animus on a jury's verdict, the Court unequivocally withheld from "decid[ing] the appropriate standard for determining

when evidence of racial bias is sufficient to require that the verdict be set aside, and a new trial be granted." *Id.* at 228 (establishing a new exception to Rule 606(b) "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant[.]"); *see also Mitchell v. United States*, 958 F.3d 775, 789-90 (9th Cir. 2020) ("*Peña-Rodriguez* established a new exception to Rule 606(b)"). As one district court put it, on the issue of when evidence of racial bias is sufficient to require that a verdict be set aside and a new trial granted, "there is no clearly established law on this point[.]" *Garcia v. Shinn*, No. CV-15-00025-PHX-DGC, 2022 WL 1166408, at *19 (D. Ariz. Apr. 20, 2022).

Nonetheless, after reviewing the relevant authority, there is no question that—as Mr. Sanchez argues—"the Sixth Amendment guarantees criminal defendants a verdict by impartial, indifferent jurors." *Hayat*, 710 F.3d at 885 (9th Cir. 2013) (quoting *Estrada v. Scribner*, 512 F.3d 1227, 1239 (9th Cir. 2008)). Moreover, "[t]he presence of a biased juror [generally] cannot be harmless; the error requires a new trial without a showing of actual prejudice." *Dyer*, 151 F.3d at 973 n.2 (citing *United States v. Allsup,* 566 F.2d 68, 71 (9th Cir.1977)); *see also Estrada*, 512 F.3d at 1235 ("the presence of a biased juror is a structural error, not subject to the harmless error analysis, and if one is found the defendant is entitled to a new trial."). As the Ninth Circuit has explained, the Sixth Amendment is

MEMORANDUM DECISION AND ORDER - 11

violated by "the bias or prejudice of even a single juror." *Henley*, 238 F.3d at 1120 (quoting *Dyer,* 151 F.3d at 973). However, as discussed below, those cases do not establish that Juror 5's presence on the jury alone is a structural error since he was dismissed before a verdict was rendered.

First, the cases Mr. Sanchez relies on to support his Sixth Amendment "structural error" argument, although different in their analysis and legal issues, all involved an allegedly biased juror who remained on the jury throughout deliberations up to, and including, when the jury actually returned a verdict.[3] *See, e.g., Mitchell*, 958 F.3d at 789; *United States v. Kechedzian*, 902 F.3d 1023, 1026 (9th Cir. 2018); *Hayat*, 710 F.3d 875, 885; *Estrada*, 512 F.3d at 1235; *Henley*, 238 F.3d at 1121; *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000); *Dyer*, 151 F.3d at 973. Mr. Sanchez has not provided, nor has the Court been able to find any authority that establishes the presence of a biased juror during deliberations or that biased statements made during deliberations alone is a

---

[3] Although Mr. Sanchez provides persuasive language from other cases, those cases involve dissimilar circumstances and legal questions. *See, e.g., Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S. Ct. 2077, 114 L. Ed. 2d 660 (1991) (discussing the use of peremptory challenges by a private litigant to exclude jurors on account of their race); *United Harmon*, 833 F.3d at 1204 (explaining that "discrimination on account of race or sex in the selection of grand jurors" is a structural error.)

**MEMORANDUM DECISION AND ORDER - 12**

structural error. In fact, even Mr. Sanchez appears to recognize that a structural error only occurs when a verdict is returned by a jury that contains a biased juror on the panel. *See Def. Br.* at 7, Dkt. 70 ("if Juror 5 had remained on the jury a few more minutes to cast a final vote for conviction, reversal of conviction would be the indisputable remedy.").

Second, as the government notes, the Ninth Circuit's decision in *Sarkisian* provides a more analogous fact pattern and, therefore, more appropriate guidance in this case. There, a convicted defendant argued that he should be granted a new trial because a juror's prejudicial statement during deliberations tainted the jury and its verdict. *Sarkisian*, 197 F.3d at 980. In particular, the court was concerned about a potentially prejudicial comment made during a meeting in chambers after it was informed that a juror had a problem continuing to serve on the jury. *Id.* While the court was trying to determine what exactly had happened, the juror made statements implying that the defendants were "gypsies" and that "they wreak havoc and whatnot." *Id.* Unable to gather more information due to the juror's escalating emotional response, the trial court eventually decided to excuse the juror. *Id.* Even though the Court dismissed the juror before a verdict was returned, the defense claimed that the verdict was tainted by the prejudicial comments, as evidenced by the jury's alleged change in demeanor and an alleged statement from another juror

that she was still afraid during closing arguments. *See id.* at 981.

After noting that a "defendant's Sixth Amendment rights are violated even if only one juror was unduly biased or improperly influenced[,]" the Ninth Circuit explained that the issue before the court was whether other juror's exposure to the prejudicial comments "so affected the jury's ability to consider the totality of the evidence fairly that it tainted the verdict." *Id.* (quoting *Smith,* 962 F.2d at 935). The Ninth Circuit's analysis did not simply rely on whether the juror's comments demonstrated actual bias or the extent of her involvement in the deliberations and eventual verdict. *Id.* at 980-82.

Here, like *Sarkisian*, the Court dismissed Juror 5 before it received the jury's verdict. Mr. Sanchez does not allege that any of the other eleven jurors who returned a verdict were themselves biased. Rather, Mr. Sanchez argues that due to Juror 5's comments, eventual dismissal and involvement in the verdict amounted to a structural error. However, even assuming that Juror 5's statements definitively show that he harbored racial or national origin biases, Mr. Sanchez has not established that a biased juror was actually part of the ultimate verdict in this case.[4]

---

[4] Neither party challenges whether Juror 5's dismissal was appropriate nor raises the issue of whether Juror 5 comments were sufficient to demonstrate actual bias. However, for (Continued)

**MEMORANDUM DECISION AND ORDER - 14**

In other words, while Mr. Sanchez's statement that "if Juror 5 had remained on the jury a few more minutes to cast a final vote for conviction, reversal of conviction would be the indisputable remedy[,]" is likely correct, that simply is not what unfolded here.[5] Thus, Mr. Sanchez has not established that Juror 5's comments or presence on the jury alone qualifies as a structural error. Instead, because Juror 5 was dismissed pre-verdict, the Court finds that the proper question here is whether Juror 5's comments "so affected the jury's ability to consider the totality of the evidence fairly that it tainted the verdict[,]" which the Court will address below. *Sarkisian*, 197 F.3d at 981 (quoting *Smith,* 962 F.2d at 935).

### 2. Interest of Justice

Relying on *Sarkisian's* pronouncement that a biased juror can "taint[ ] the

---

purposes of this motion, the Court will assume that Juror 5's statements rise to such a level. While it seems likely, that the Court would have found that Juror 5's statements did, in fact, demonstrate racial bias, the Court's focus in dismissing Juror 5 was on his ability to deliberate impartially. The Court did not make a finding that Juror 5 comments rose to a level that would have necessarily invalidated the jury's verdict if the Court had already received one. *See Trial Tr.* 98:22-99:4, Dkt. 82.

[5] The Court concludes that it should not extend the precedent establishing structural error to this case simply because Juror 5 was *essentially* present for the entire deliberations. To do so would require the Court to draw an arbitrary line in deciding when a potentially biased juror's presence during deliberations is enough to render the verdict void. Since the merits of jury deliberations are protected from inquiry, determining a biased juror's involvement in deliberations is necessarily speculative and, therefore, ill-suited to applying the structural error standard Mr. Sanchez appears to request. Instead, the Court finds *Sarkisian*'s more flexible and holistic standard better suited to the task presented when an allegedly biased juror was present during deliberations but not part of the ultimate verdict.

verdict," Mr. Sanchez next argues that even if Juror 5's comments do not rise to structural error, the Court should still grant his motion. *See Motion* at 7, Dkt. 70 (quoting *Sarkisian*, 197 F.3d at 981). In particular, Mr. Sanchez contends that because Juror 5 "was effectively present for the entirety of the jury's deliberations," a new trial is warranted in the interest of justice. *Id.* at 10.

As mentioned, the Ninth Circuit in *Sarkisian* addressed whether the defendant was entitled to a new trial because the jury's verdict was tainted by a dismissed juror's potentially prejudicial comments during deliberations. *See* 197 F.3d at 981. There, the court found that a new trial was not warranted because the dismissed juror's "gypsy" comments "did not affect the jury's ability to consider the totality of the evidence fairly or taint the verdict." *Id.* at 182. The Ninth Circuit reasoned that the district court took sufficient steps to ensure that the jurors were not prejudiced, including holding *in camera* meetings where the district court questioned each juror on what they had been told and whether they would be able to continue as impartial members of the jury. *See id.* at 181. The court further explained that only two other jurors had mentioned the "gypsy" comment during its inquiry, and both thought that it was so obscure that they couldn't understand it. *See id.* Finally, the Ninth Circuit gave great deference to the trial court's statement that "based on meeting with each of the jurors for the few minutes it did as to each

of the interviews, I am 110 percent satisfied that we have an unbiased unprejudiced jury." *Id.* at 182.

Like *Sarkisian*, the Court thoroughly investigated the alleged biased comments by bringing each juror in to sit for questioning. Also like *Sarkisian*, the majority of the jury—including Juror 24, Juror 33, Juror 28, Juror 8, Juror 4, Juror 2, and Juror 1—informed the Court that it had no awareness of Juror 5's comments nor did they hear any other comments that they believed demonstrated bias or racial insensitivity during deliberations.[6] *See Trial Tr.* 40:7-19 (Juror 24); *Id.* at 48:1-49:6, (Juror 33); *id.* at 54:3-22 (Juror 28); *id.* at 73:1-25 (Juror 8); *id.* at 79:1-17 (Juror 4); *id.* at 83:1-87:12 (Juror 2); *id.* at 90:1-91:9 (Juror 1). Of the jurors who did hear any of the concerning comments, the Court directly inquired whether those comments affected the juror's deliberations or verdict. *See, e.g., Trial Tr.* 43:20-21, Dkt. 82 (asking Juror 25 if "those comments affect your individual verdict" and "do you have any reservations about your ability to say that?"). In response, each juror unambiguously informed the Court that those comments did

---

[6] Although many jurors did not hear any racially biased comments, Juror 33, Juror 28, Juror 8, Juror 4, and Juror 2 stated that they heard Juror 16 accuse another juror of being racist. *See Trial Tr.* 49:1-16 (Juror 33); *Trial Tr.* 54:23-24 (Juror 28); *Trial Tr.* 73:1-25 (Juror 8); *Trial Tr.* 79:17-81:1 (Juror 4); *Trial Tr.* 83:1-84:25 (Juror 2). Similarly, Juror 1 believed that that accusation was directed at him. *Trial Tr.* 90:9-25, Dkt. 82.

**MEMORANDUM DECISION AND ORDER - 17**

not affect their deliberations or individual verdicts.[7] *See id.* at 43:20-44:4 (Juror 25); *id.* at 64:23-65:24 (Juror 15); *id.* at 69:20-70:12 (Juror 12).

As the Court explained during the trial, "all of the [remaining] jurors have unequivocally expressed their view that they were not affected by any statement or any accusation of discrimination; that they do not believe that their individual verdict or verdict of other jurors [were] affected by any statement or accusation of racism made during the jury's deliberations." *Trial Tr.* 98:16-21, Dkt. 82. Notably, Mr. Sanchez has not brought forth any additional evidence of juror bias that the Court had not previously considered. Instead, Mr. Sanchez largely relies on the same arguments and facts that he made during his first motion for a new trial. *See id.* at 18:9-21; 26:1-27:25. However, as the Court previously explained following a thorough inquiry of each juror, it is "very confident that the remaining jurors did not and would not let any racial animus or national origin animus affect their verdict." *Id.* at 100:20-25.

---

[7] Regarding the jurors who did not hear any biased statements but did hear an accusation of racism, the Court similarly inquired if those accusations affected the jurors. Like the jurors who heard a potentially biased comment, no juror indicated that the accusations of racism affected their deliberations or verdicts in this case. *See Trial Tr.* 49:3-16, Dkt. 82 (Juror 33); *Id.* at 56:12-24 (Juror 28); *Id.* at 74:1-22 (Juror 8); *Id.* at 81:2-24 (Juror 4); *Id.* at 86:8-87:10 (Juror 2); *Id.* at 91:10-24 (Juror 1, even though Juror 1 believed the racist comment was directed at him, there was no evidence that he made any such comments, nor did he believe the transaction affected his deliberations or verdict).

Simply put, the Court does not believe there is any new information that requires reconsideration of its prior position or ruling. As discussed, most of the jurors did not hear any comments that could be considered racially biased, and those that did, assured the Court that such comments had no influence on their deliberations or verdict. While procedural safeguards could not ensure Juror 5's impartiality resulting in his dismissal from the jury, there is no reason to believe that the Court's efforts to cure the jury of any potential bias was insufficient to protect Mr. Sanchez's Sixth Amendment rights as to the remaining eleven jurors. More importantly, there is no reason to question the remaining juror's statements that they were not "unduly biased or improperly influenced." *See Sarkisian*, 197 F.3d at 981 (citing *United States v. Keating,* 147 F.3d 895, 903 (9th Cir. 1998)). Accordingly, the Court will deny Mr. Sanchez's motion for a new trial based on the interest of justice.

**B.    Proceeding with an eleven-member jury instead of granting a mistrial was in the interest of justice.**

In a corollary augment, Mr. Sanchez finally claims he should be granted a new trial because the Court's decision to proceed with an eleven-member jury after Juror 5 was dismissed for "misconduct" was a mistake. *See Def.'s Br.* at 10–11, Dkt. 70. Mr. Sanchez argues that since a retrial would have been too burdensome, a new trial should have been granted instead of continuing with the remaining

eleven jurors. *See id*. The Court is not persuaded.

Federal Rule of Criminal Procedure 23(b)(3) provides that "[a]fter the jury has deliberated, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror." *See also United States v. Brown*, 784 F.3d 1301, 1304 (9th Cir. 2015) ("Thus, as currently constituted, the Rules provide courts three options after excusing a juror for good cause during deliberations: (1) declare a mistrial; (2) proceed with 11 jurors; or (3) seat an alternate.").

As mentioned, Mr. Sanchez does not argue that Juror 5 should not have been dismissed. Instead, he argues that once Juror 5 was dismissed, the Court should have declared a mistrial. However, it is clearly within the Court's discretion to proceed with eleven jurors and neither grant a mistrial nor seat an alternative when a juror is dismissed for good cause during deliberations. *See Brown*, 784 F.3d at 1304. Here, the evidence part of the trial lasted for four days. The government utilized multiple fact and expert witnesses from various locations, some of which required the presence of an interpreter. Additionally, the jury deliberated for a full day and asked multiple questions, which the Court and parties "spent significant time considering and responding to[.]" *Id.* at 1305. Thus, the Court does not find that a mistrial was the necessary path forward after dismissing Juror 5.

**MEMORANDUM DECISION AND ORDER - 20**

The Court similarly does not believe that seating an alternate would have been a more appropriate option. "[I]t has been widely recognized that jurors may not be able to set aside their conclusions and that an alternate may be intimidated, choosing to go along with other jurors' views rather than exercising independent judgment." *Id.* at 1306. As mentioned, the jury spent a significant amount of time deliberating and even more time waiting for the Court to resolve the issue with Juror 5. By the time that Juror 5 was dismissed, it was Friday afternoon. In order to seat an alternate, it would almost certainly have been necessary to postpone any further deliberations until the following week. The Court did not—and does not— believe that making the jury sit idly by while it waited for the alternate to be seated was in the interest of the Court, the parties, or the jury. *See id.* ("If the court had substituted an alternate, the jury would have been required to begin deliberations anew, discarding the substantial work [that] the parties and the court had done."). Nor does it believe that seating an alternative the following week would have been a wise decision. *See id.* at 1307 ("When deliberations have been extended, jurors are more likely to have reached firm conclusions on certain issues, and alternates may be at a greater risk of intimidation.").

Simply put, given the length and nature of the trial and deliberations, the Court does not find that its decision to proceed with eleven jurors was in error. *See*

*id.* (finding the district court did not abuse its discretion when it proceeded with eleven jurors after dismissing a juror for good cause where the jury had deliberated for over a day following a 5-day trial and asked five substantive questions). The Court decided that "justice would best be served by proceeding with a jury of 11 individuals[,]" and it does so again. *See id.*

Finally, Mr. Sanchez's attempt to distinguish his case by classifying the basis for dismissing Juror 5 as "misconduct" rather than "good cause" is similarly unpersuasive. *Def.'s Motion* at 11, Dkt. 70. Mr. Sanchez did not provide any legal support for his position, nor has the Court found that any authority suggesting the "good cause" exception is limited to circumstances where a juror is "unavailab[le] for reasons unrelated to his ability to serve as a juror," or that concern about racial bias would not meet the "good cause" standard. *Id*. Indeed, Ninth Circuit precedent suggests the opposite. *See, e.g., United States v. Litwin*, 972 F.3d 1155, 1172 (9th Cir. 2020) ("it is true that bias is a permissible ground on which to dismiss a juror.") (citing multiple circuit court cases); *Vartanian*, 476 F.3d at 1098 ("'Good cause' encompasses a variety of problems that may arise with respect to the jury, including sickness, family emergency, or *misconduct*.") (emphasis added); *United States v. Egbuniwe*, 969 F.2d 757, 763 (9th Cir. 1992) (affirming the trial court's decision to proceed with eleven jurors after excusing a juror during deliberations

"for just cause based on the fact that he received information that appeared to bias him against law enforcement in this criminal case.").

Accordingly, the Court does not find that proceeding with eleven jurors instead of seating an alternate or declaring a mistrial was a mistake or entitles Mr. Sanchez to a new trial.

## CONCLUSION

As a final, general statement, the Court's decision does not reflect an ignorance to the potential harm racial biases can have on an individual's right to a fair trial. Juror 5's alleged comments undoubtedly raise concern. However, this case does not present a scenario that requires a new trial as a result of either a structural error or in the interest of justice. The Court ultimately decided to dismiss the juror before his potential bias was included in the verdict and undertook extensive measures to ensure that any potential bias did not permeate the jury or affect the remaining juror's verdicts. Accordingly, after much consideration, the Court will deny Mr. Sanchez's motion for a new trial.

## ORDER

**IT IS ORDERED that:**

1.      Defendant's Motion for New Trial (Dkt. 70) is **DENIED**.

DATED: September 19, 2023

_____

B. Lynn Winmill
U.S. District Court Judge